UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
APR 12 2016
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

DANIEL GLEED,

    Plaintiff,

v.

AT&T SERVICES, INC.,

    Defendant.
_____/

Case No. 13-12479

Paul D. Borman
United States District Court

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO PRECLUDE EVIDENCE OF LOST WAGES AND EXPERT WITNESS TESTIMONY (ECF NO. 47)

The Joint Final Pretrial hearing was held on January 19, 2016. At that hearing, Defendant and Plaintiff brought forth certain issues that were unknown at the time Defendant submitted its earlier Motion *in limine* to the Court. The Court then directed Defendant to raise its issues in a motion to the Court. The jury trial is currently scheduled to begin on Tuesday, May 3, 2016.

Before the Court is Defendant's "Motion to Preclude Evidence of Lost Wages and Expert Witness Testimony from Plaintiff's Treating Healthcare Providers." (ECF No. 47.) Plaintiff filed a Response (ECF No. 47) and Defendant then filed a Reply (ECF No. 48). A hearing on this motion was held on Tuesday, April 5, 2016.

### I. BACKGROUND

The Court previously issued an Order resolving Defendant's earlier filed Motion *in limine*. (ECF No. 44.) In that Order, the Court set forth a summary of the background of the case which the Court incorporates here:

    This action arises from Plaintiff Daniel Gleed's allegations of disability

discrimination against his previous employer, Defendant AT&T Mobility Services, LLC ("Defendant"). Plaintiff worked as a Retail Sales Consultant at Defendant's retail store in Jackson, Michigan. In November 2011, Plaintiff alleges that he presented his manager, Erick Smith, with a note from a nurse practitioner providing that he be allowed to sit as needed to accommodate the cellulitis (skin infection) he suffered on his legs and the eczema [and/or psoriasis] on his feet. Plaintiff claims that Smith refused to allow him to sit and refused to include the pertinent nurse's note in his file. Smith, on the other hand, testified he instructed Plaintiff that he could use a stool to sit and prop up his leg on the table while on the sales floor or he could take extra breaks to sit in the back room. Smith also testified that Plaintiff did in fact sit on a stool and prop his leg up while on the sales floor.

Seven months later, after visiting the emergency room because of his skin infection, Plaintiff was told he needed to come to the doctor's office "each day for up to six weeks for hour-long IV treatments." (ECF No. 38, Sixth Circuit Opinion Order, at 2.) Plaintiff then sought to adjust his work schedule "so that he could receive the treatments without missing work" (*Id.*). Smith allegedly denied the request. Thereafter, Plaintiff spoke with a representative from Defendant's Human Resource department who offered him unpaid leave and the chance to later apply for back-pay. Plaintiff did not ask the HR representative for an adjustment to his schedule. (*Id.*). Plaintiff then told Smith he was resigning and sent him an email stating the same later that day.

Plaintiff's complaint sets forth three counts: (1) a claim of disability discrimination for failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (2) a claim of reverse gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. § 2000e-2 and (3) a claim of "constructive discharge." This Court previously granted summary judgment to Defendant on all three claims (ECF No. 28). The Sixth Circuit reversed this Court's Judgment as to Plaintiff's ADA claim, finding that there was a genuine issue of material fact regarding whether Plaintiff was denied a reasonable accommodation in November 2011 to sit as needed for his medical condition. (ECF No. 28, Opinion and Order at * 3-5.) The Sixth Circuit affirmed this Court's dismissal of Plaintiff's claims of gender discrimination and constructive discharge as well as Plaintiff's claim that Defendant failed to accommodate his IV treatments. (*Id.* at * 6-7.)

(ECF No. 44, at *1-3.)

## II. STANDARD OF REVIEW

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and

interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures – including motions in limine – in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir. 2013) ("A motion in limine is any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." (internal quotation marks omitted)). "Motions *in limine* typically involve matters which ought to be excluded from the jury's consideration due to some possibility of prejudice or as a result of previous rulings by the Court." *Provident Life & Acc. Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (E.D. Mich. Sept. 27, 1997) (Gadola, J.). District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991).

III. ANALYSIS

A.   Treating Physicians' Testimony

Defendant contends that Plaintiff's treating physicians should be precluded from offering any expert causation testimony regarding the exacerbation of his original medical condition, and from offering any expert testimony regarding any alleged mental and physical pain he suffered as a result of being denied a sitting accommodation. Plaintiff did not identify his treating physicians as expert witnesses as required by Fed. R. Civ. P. 26(a)(2) and did not provide summary disclosures regarding his treating physicians' exert testimony as required by Rule 26(a)(2)(C). While Plaintiff produced all of his medical records and designated those records as trial exhibits, Defendant contends that these actions did not comply with the Federal Rules of Civil Procedure.

Pursuant to Rule 26(a)(2)(A), a party is required to disclose the identity of any witness it may use at trial to present evidence under Rules 702, 703, or 705, *i.e.* testimony based on scientific, specialized or technical knowledge. Rule 26(a)(2)(B) requires that the disclosure of experts who are "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony" must be accompanied with a written report detailing, *inter alia*, specific information regarding the expert witness's qualifications and a complete statement of the opinions they will offer. *See* FED. R. CIV. P. 26(a)(2)(B)(I)-(vi).

In 2010, Rule 26 was amended to add subsection (a)(2)(C), which aimed to "resolve[] a tension that ha[d] sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempt[]" from the written report requirement. FED. R. CIV. P. 26, cmt. 2010 Amendments, subdivision (a)(2)(C), para. 1. Rule 26(a)(2)(C) now requires disclosure of expert witnesses who are not specially employed or retained and requires disclosure of "the subject matter on which the witness is expected to present evidence under Rule 702, 703, or 705," and "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C)(I)-(ii). The Advisory Committee Notes to Rule 26 recognize that "[a] witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Rule 702, 703, or 705. *Frequent examples include physicians...who do not regularly provide expert testimony.*" FED. R. CIV. P. 26, cmt. 2010 Amendments, subdivision (a)(2)(C), para. 3 (emphasis added). These summary disclosures are recognized as "considerably less extensive than the report required by Rule 26(a)(2)(B)." *Id.* at para. 1. Courts are also cautioned not to require "undue detail" and to be cognizant that these

"witnesses have not been specially retained and may not be as responsive to counsel as those who have." *Id.* At the same time, the Rules do not permit a Plaintiff to "dump" medical records on the defendant, nor do they eliminate the requirement of providing summary disclosures.

Rule 26(a)(2)(D) requires that "[a] party must make these disclosures at the times and in the sequence that the court orders." If a party fails to make these disclosures then "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

Plaintiff contends: (1) his treating physicians did not need to be identified as experts pursuant to Rule 26(a)(2); (2) alternatively, even if he was required to disclose his treating physicians under Rule 26(a)(2)(C), he satisfied this requirement because at the time of the Final Pretrial Conference Defendant was aware of what testimony these doctors would be offering; and (3) assuming Plaintiff erred, his error was substantially justified and/or was harmless and, therefore the testimony should not be excluded.

In sum, the questions before this Court are: (1) whether Plaintiff was required to identify his treating physicians as expert witnesses pursuant to Rule 26(a)(2) and make the proper disclosure under subsection (C), or put another way, whether Plaintiff's treating physicians can testify as lay witnesses to facts beyond Plaintiff's treatment as to the cause or exacerbation of Plaintiff's skin condition, or to his pain and emotional distress; (2) if Plaintiff was required to identify his treating physicians as experts, did Plaintiff comply with the disclosure requirements of Rule 26(a)(2)(C); and (3) if not, should the Court exclude that expert testimony under Rule 37(c) or was the failure harmless or substantially justified.

5

1.  Was Disclosure under Rule 26(a) required?

As explained in *McFerrin v. Allstate Property & Cas. Co.*, 29 F. Supp. 3d 924, 933 (E.D. Ky. 2014),

> although treating physicians do not automatically have to be disclosed as experts under Rule 26(a)(2), treating physicians and treating nurses "must be designated as experts if they are to provide expert testimony" as defined in Federal Rule of Evidence 702. ... McFerrin is correct that an expert report [under subsection (B)] is generally not required for a treating physician who will testify regarding the course of treatment. If, however, the treating physician testifies "beyond the scope" of the treatment rendered and gives opinion testimony based on his "scientific, technical, or otherwise specialized knowledge," then the treating physician is still testifying as an expert witness, and at the very least must be disclosed according to the requirements in Rule 26(a)(2)(A) and (C)...

(citing *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007) and *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004)); *Daniels v. District of Columbia*, 15 F. Supp. 3d 62, 70 (D.D.C. 2014) (holding that "testimony as to the diagnosis and treatment of a patient, and the reasons therefore, is beyond the ability of the average lay witness' competency and is necessarily based on 'the expert's scientific, technical, or specialized knowledge,' in the form of doctors' medical training and experience.") (citing Fed. R. Evid. 702). As further summarized in the Practice Commentary in the Advisory Committee Notes to Rule 26:

> The types of disclosures made will then determine the scope of testimony actually allowed. Treating physicians disclosed only as lay witnesses may testify only to lay facts. Treating physicians for whom summary disclosures are provided may opine on matters relating to treatment and diagnosis. If the treating physician files an expert report, then the treating physician may testify as a retained expert to matters that go beyond treatment and diagnosis.

Duty to Disclose; General Provisions Governing Discovery, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 26. Ergo, where a treating physician is not properly disclosed as an expert under Rule 26(a)(2), the witness "will only be allowed to testify as a fact witness under

Rule 26(a)(1), and, as such, <u>will be limited to testifying as to the course of treatment and to what he directly observed while [plaintiff] was under his care</u>." *McFerrin*, 29 F. Supp.3d at 935 (emphasis added).

In the present action, Plaintiff wishes his treating physicians to opine on the <u>causation (or exacerbation)</u> of his psoriasis and opine on the causation of his emotional distress or physical pain. Such opinions are not "lay facts" and would necessarily require the treating physician to use his or her "scientific, technical, or other specialized knowledge" to form such an opinion. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010) ("'lay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field.'" (citation omitted).).

Plaintiff relies solely upon this Court's decision in *Nemeth v. Citizens Fin. Grp.*, No. 08-cv-153226, 2012 WL 3278968 (E.D. Mich. Aug. 10, 2012) (Borman, J.), for the proposition that he did not need to disclose his treating physicians as experts under Rule 26(a)(2). Plaintiff's reliance is misplaced. In *Nemeth* this Court did not address whether the plaintiff was excused from complying with the Rule 26(a)(2)(C) disclosure requirement. Indeed, *Nemeth* did not address the subsection (C) requirement whatsoever nor did it rely upon any law that post-dated the 2010 Amendment to Rule 26. This limits any persuasive value *Nemeth* has on this issue.

Accordingly, this Court finds that to the extent that Plaintiff seeks to introduce *opinion* testimony regarding the causation or exacerbation of his medical condition or *opinion* testimony regarding his physical pain or emotional distress, such testimony is *expert* testimony and the treating physician offering that expert opinion should have been identified as an expert pursuant to Rule 26(a)(2) and summary disclosures were required under Rule 26(a)(2)(C).

2. Did Plaintiff Satisfy Rule 26(a)(2)(C)?

Plaintiff argues that he satisfied the disclosure requirement of Rule 26(a)(2)(C) because at the time of the Joint Final Pretrial Conference, he contends that Defendant had ascertained the subject matter of the anticipated opinion testimony of his treating physicians. (Pl.'s Resp. at *7-8.) Plaintiff argues that "this disclosure" and the "hundreds of pages of medical records" produced three years ago "clearly satisfies subjection C of Rule 26(a)(2)." (*Id.* at *8.) Defendant asserts that Plaintiff did not satisfy Rule 26(a)(2)(C) because he failed to produce any summary disclosures and only produced hundreds of pages of medical records.

The Court finds that simply identifying a witness in an interrogatory and/or producing medical records does not meet the disclosure requirements of Rule 26(a)(2)(C). Indeed, Plaintiff does not cite a single authority for such a proposition. Rule 26(a)(2)(C) provides that the disclosures must state "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C)(i),(ii).

Plaintiff fails to cite with any particularity where and when exactly he disclosed to Defendant the subject matter of his treating physicians' opinion testimony. Rather, Plaintiff appears to argue that Rule 26(a)(2)(C) was satisfied because Defendant deduced what opinions his treaters would offer on the eve of trial with the help of the Proposed Joint Final Pretrial Order and hundreds of pages of medical files. This argument is not persuasive. While disclosures made under subsection (C) are "considerably less extensive" than a full expert report; "to guard against the prejudice of unfair surprise on opposing parties, and for Rule 26(a)(2)(C) to have any meaning, summary disclosures must contain more than a passing reference to the care a treating

8

physician provided." *Marr v. Abercrombie & Fitch Stores, Inc.*, No. 5:14-CV-00123-F, 2015 WL 3827326, *4 (E.D. N.C. June 19, 2015) (citation omitted). As a district court in this Circuit recently explained:

> a summary of opinions under Rule 26(a)(2)(C) means a brief account of the main opinions of the expert, and that the opinions must state a view or judgment regarding a matter that affects the outcome of the case. A mere statement of the topics of the opinions is insufficient. Further, this Court finds that a summary of facts supporting those opinions under Rule 26(a)(2)(C) means a brief account of facts-only those on which the expert actually relied in forming his or her opinions-that states the main points derived from a larger body of information; merely stating the topic matters of facts relied upon does not suffice. Similarly, it does not suffice to reference large bodies of material as sources of facts, without stating a brief account of the main points from those large bodies of material on which the expert relies.

*Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, No. 2:09-CV-1081, 2015 WL 1105840, at *9 (S.D. Ohio Mar. 11, 2015).

Again, Plaintiff has failed to cite any case law to support the proposition that producing medical records satisfies the disclosure requirements of Rule 26(a)(2)(C). Indeed, case law indicates precisely the opposite – that the mere production of medical records *does not* satisfy subsection (C) disclosure requirements. *See Ballinger v. Casey's Gen. Store, Inc.*, No. 1:10-cv-1439, 2012 WL 1099823, *4-5 (S.D. Ind. Mar. 29, 2012) (collecting authority and rejecting the argument that medical records satisfy Rule 26(a)(2)(C) noting "while the medical records touch on the subject matter of a treating physician's testimony, the records do not necessarily provide an accurate or complete summary of expected testimony since medical records are not typically created in anticipation that those records would be used as a witness disclosure."); *Marr*, No. 5:14-CV-00123-F, 2015 WL 3827326, at *5 (production of and reference to medical records does not constitute a summary of a treating physician's opinions.); *Carrillo v. B&J Andrews*

*Enter.*, No. 2:11-cv-01450, 2013 WL 394207, * 6 (D. Nev. Jan. 29, 2013) (holding that "the production or disclosure of medical records, standing alone, is not sufficient to satisfy the requirements of Rule 26(a)(2)(C)."). Moreover, allowing a party to end-around the disclosure requirements of subsection (C) by merely providing medical records "would invite a party to dump a litany of medical records on the opposing party, contrary to the rule's attempt to extract a 'summary.'" *Ballinger*, No. 1:10-cv-1439, 2012 WL 1099823, at *4. In fact, Plaintiff's "disclosure" in this case is little more than an invitation for Defendant to go fish. *See Carrillo*, No. 2:11-cv-01450, 2013 WL 394207, *6 (holding "[t]he court will not place the burden on Defendants to sift through medical records in an attempt to figure out what each expert may testify to.") (citation omitted).

Accordingly, the Court finds that Plaintiff did not satisfy his disclosure requirement under Rule 26(a)(2)(C).

3.     Application of Rule 37(c)

As the Court concludes that Plaintiff was required to identify his treating physicians as experts under Rule 26(a)(2) and make summary disclosures under Rule 26(a)(2)(C) to the extent those witnesses would offer expert opinion causation testimony or opinion testimony regarding Plaintiff's mental or physical pain, the Court now turns to whether Plaintiff's failure in this regard was "substantially justified or harmless." FED. R. CIV. P. 37(c). "[T]he test [for exclusion under Rule 37(c)] is very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) (citation omitted).

Plaintiff argues that his failure to disclose was substantially justified because he relied upon this Court's decision in *Nemeth*. Plaintiff also appears to argue that the failure to disclose his treaters as experts was harmless because Defendant was in possession of his medical records and had three years to depose his treating physicians because they had been identified (apparently in an interrogatory).

Plaintiff does not cite any case law in support of the argument that a failure to provide proper expert disclosures can be substantially justified based upon a party's reliance on a single unpublished and non-binding district court opinion. Indeed, the Court finds that such reliance is not reasonable given the extensive case law on the issue and the fact that Plaintiff relied upon a case that was non-binding and unpublished, and more significantly, did not reach or address the pertinent provision – Rule 26(a)(2)(C) disclosures of non-retained treating physicians. Moreover, Plaintiff's reliance is unreasonable in the face of the Advisory Committee Notes regarding Rule 26(a)(2)(C) which recognize that "frequent examples" of witnesses that must be identified pursuant to Rule 26(a)(2)(A) and who are subject to the disclosure requirement of Rule 26(a)(2)(C) are "physicians and employees of a party who do not regularly provide expert testimony." Accordingly, the Court finds that Plaintiff was not "substantially justified" in his failure to disclose his treating physicians as experts pursuant to Rule 26(a)(2)(A) or his failure to make the required expert disclosures pursuant to Rule 26(a)(2)(C).

Plaintiff's argument that his failure was harmless must also be rejected. Plaintiff's failure to make summary expert disclosures was clearly prejudicial to Defendant. While the medical records were not voluminous, there is nothing in them indicating that Plaintiff's infection or IV treatment in June 2012 was connected to his alleged inability to sit as needed at work seven

11

months earlier, or indicating his condition was exacerbated by the same. Finally, there is nothing in the medical records that speak to Plaintiff's physical pain or mental distress. Therefore, any opinion testimony on these subjects constitutes unfair surprise to Defendant; "[t]o blindly spring causation testimony on Defendant [shortly] before trial without the benefit of any explanation or discovery is [] extremely prejudicial." *Ballinger*, No. 1:10-cv-1439, 2012 WL 1099823, at *5. Under similar circumstances courts have granted motions to exclude and held that a treating physician "is limited to personal observations, diagnoses, and treatment contained in the medical records and formed in the course of treatment." *Id.*; *see also Carrillo*, No. 2:11-cv-01450, 2013 WL 394207, *7 (finding no prejudice because the treatment records were not voluminous and defendant had sufficient time to review them and conduct "other discovery" but holding that "[n]evertheless, Plaintiff should not obtain a strategic advantage because of her own failure" and limiting the witnesses to "the subject matter of their treatment as disclosed in the medical records and to opinions formed in the course of treatment.").

In the present case, the trial is less than a month away and the prejudice suffered by Defendant cannot reasonably cured in this time frame as there is no time for Defendant to secure rebuttal expert witnesses or even depose Plaintiff's treating physicians. For these reasons, the Court grants Defendant's Motion *in limine* to the extent that Plaintiff's treating physicians may testify only as lay witnesses and are "limited to testifying as to the course of treatment and to what he [or she] directly observed while" Plaintiff was under his or her care as set forth in the medical record. *McFerrin*, 29 F. Supp. 3d at 935.

Finally, during oral argument Defendant argued that Plaintiff, himself, should also be precluded from testifying as to his belief that the denial of his sitting accommodation was

12

connected to the development of an infection seven months later. Defendant notes that Plaintiff, as a lay witness, could testify as to any symptoms he suffered or the chronology of his ailment but could not offer an opinion as to the source of his infection in June 2012 because such testimony would fall outside the scope of proper lay witness testimony.

The Court agrees that Plaintiff cannot testify as to the cause of his infection in June 2012 because such an opinion could not be based upon his own perception. Rule 701 provides that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact at issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701. "In distinguishing proper lay testimony from expert testimony, this court has specified that 'lay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field.'" *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010).

Here, any testimony Plaintiff could offer regarding the source of his infection in June 2012 could not be based upon his own perception but rather only be based upon a "scientific, technical, or other specialized knowledge." It would be strange indeed, if the Court were to hold that Plaintiff's treating physicians could not offer opinions as to the cause of his infection in 2012 or his condition in 2011 to his infection in 2012 because they were not disclosed as proper *experts*, but then allow Plaintiff to offer that same opinion as a *lay witness*. While the "modern trend among courts favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination," Plaintiff's testimony as to

13

the causation of his infection could not be based upon a "process of reasoning familiar in everyday life" and thus cannot be found to be "rationally based" upon his perceptions.

B.  Lost Wages As Damages

Defendant next argues that Plaintiff should be precluded from recovering any wage loss because his constructive discharge claim has been dismissed and because Plaintiff cannot support this theory of liability with any relevant evidence.

To prove a claim of constructive discharge a plaintiff must show: "1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." (ECF No. 28, at *21-22, quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 727-28 (6th Cir. 2014).) This Court previously held in its Opinion and Order granting Summary Judgment that (1) the facts of this action did not evidence a situation in which "a reasonable person would have felt compelled to quit;" and (2) Plaintiff could not "establish any genuine issue of material fact regarding whether Defendant deliberately created intolerable working conditions or whether Defendant intended Plaintiff to quit." (*Id.* at *24.) This conclusion was affirmed by the Sixth Circuit in its July 2015 Opinion, wherein the Sixth Circuit held that Plaintiff's constructive discharge claim failed because there was no evidence in the record that Defendant intended Plaintiff to quit, and evidence that Defendant denied Plaintiff's request for a reasonable accommodation was insufficient by itself to prove the same. *Gleed v. AT&T Mobility Services, LLC*, 613 F. App'x 535, 539-40 (6th Cir. 2015) (located on the docket, at ECF No. 34, at *7.)

In support of its argument that Plaintiff cannot seek damages (front or back pay) past the date of a voluntary resignation or retirement unless there was a constructive discharge, Defendant

14

relies upon *Lulaj v. Wackenhut Corp.*, 512 F.3d 760 (6th Cir. 2008). *Lulaj* is distinguishable from the instant case based on the fact that it involved a state law claim of gender discrimination in the context of a failure to promote under the Elliott-Larsen Civil Rights Act (a Michigan state law claim that mirrors the legal standards of claim arising under Title VII, *see Fuller v. Mich. Dept. of Transp.*, 580 F. App'x 416, 421 (6th Cir. 2014)), rather than a claim pursuant to the ADA. In *Lulaj*, the Sixth Circuit held that a plaintiff's front pay claim had to be reduced to zero as a matter of law where a jury had determined that she was not constructively discharged. *Id.* at 767. In reaching that conclusion, the Sixth Circuit stated: "[i]n a promotions case, the period of liability will end if plaintiff voluntarily quits his employment with the defendant absent a constructive discharge." *Lulaj*, 512 F.3d at 767 (quoting *EEOC v. Monarch Mach. Tool Co.*, 737 F.2d 1444, 1453 (6th Cir. 1980)). Additionally, the Sixth Circuit quoted and relied upon *Jurgen v. EEOC*, 903 F.2d 386, 389 (5th Cir. 1990) for the proposition that "in order for an employee to recover back pay for lost wages beyond the date of his retirement or resignation, the evidence must establish that the employer constructively discharged the employee." *Lulaj*, 512 F.3d at 767.

Plaintiff argues that under the ADA a plaintiff may recover a variety of damages including back pay, front pay, injunctive relief, reinstatement, compensatory or punitive damages. *See* 42 U.S.C. § 12117(a) (incorporating the "powers, remedies, and procedures set forth in section 2000e-4, 2000e-5... of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, ... or to any person alleging discrimination ...."); 42 U.S.C. § 2000e-5(g) (allowing injunctive relief or reinstatement with or without back pay or any other equitable relief the court finds appropriate). Plaintiff then concludes with no analysis,

15

reasoning, or citation to case law that the Court need not examine the issue of wage loss "through a constructive discharge analysis" because "said analysis is not necessary since the Plaintiff's lost wages are clearly and inextricably part and parcel of Plaintiff's damages as to his failure to accommodate claim." (Pl.'s Resp. at 6.)

Other circuits have found that plaintiffs who voluntarily resign and were not constructively discharged generally cannot recover back pay. *See Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7 (1st Cir. 2002); *Hertzberg v. SRAM Corp.*, 261 F.3d 651 (7th Cir. 2001): *Caviness v. Nucor-Yamato Steel Co.*, 105 F.3d 1216 (8th Cir. 1997); *Mallison-Montague v. Pocrnick*, 224 F.3d 1224 (10th Cir. 2004); *see also Brady v. Wal-Mart Stores, Inc.*, 03-3843, 2005 WL 1521407, (E.D.N.Y. June, 21, 2005) (noting that the Second Circuit has not adopted the rule but applying it and collecting authority, and referring to this doctrine as the "constructive discharge rule.") However, the Ninth Circuit found the constructive discharge rule or doctrine was inapplicable in the context of a refusal to hire action and also noted that "[b]ecause the termination date for backpay awards in Title VII cases is peculiarly dependant upon each case's unique facts ... even in cases involving an employer's refusal to promote, courts do not apply the backpay limitation rotely." *Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 n. 4 (9th Cir. 1986). The Ninth Circuit also cited several failure-to-promote cases in which back pay was awarded past the date of resignation when the resignations were casually related to the discriminatory failure to promote. *Id.* (collecting authority). Finally in *Lulaj*, as noted *supra*, the Sixth Circuit has tacitly applied the constructive discharge rule in a failure to promote case

involving Michigan law.[1]

This Court need not address the ultimate question of whether the constructive discharge rule has been adopted in the Sixth Circuit or whether this doctrine is applicable in the context of a failure to accommodate claim made pursuant to the ADA. Plaintiff's argument is that his resignation was causally linked to Defendant's alleged failure to accommodate his disability seven months prior to his resignation and, therefore, he should be able to collect damages flowing from his resignation. However, as examined above, Plaintiff cannot offer (or is precluded from offering) any evidence that would causally link his infection in June 2012 with the alleged denial of his sitting accommodation in November 2011. Thus, the Court finds that Plaintiff's theory for wage loss is unsupported by any evidence and Defendant's request to preclude the issue of wage loss from the liability portion of the trial must be granted.

C.     Qualifying Disability under ADA

As explained on the record, the Court also denies Plaintiff's request that Defendant be barred from arguing whether Plaintiff had a qualifying disability within the meaning of the ADA. The Court finds that Defendant previously conceded the issue of whether Plaintiff had a qualifying disability only for purposes of summary judgment as specifically set forth in its

---

[1] In *Jurgens v. EEOC*, 903 F.2d 386 (5th Cir. 1990), the case the Sixth Circuit quotes in *Lulaj*, the Fifth Circuit examined the issue and collected authority for the proposition that "[o]ther courts have agreed that in order to be eligible for back pay compensation for lost wages beyond the end of the employment period, the employee must have been actually or constructively discharged by the employer." *Id.* at 390, n. 5 (collecting authority). *Jurgens* cited *Harrington v. Vandalia-Butler Bd. of Ed.*, 585 F.2d 192 (6th Cir. 1978) in support of this statement, however, *Harrington* is distinguishable and has since been superceded by statute. *See Paciorek v. Mic. Con. Gas Co.*, 179 F.R.D. 216, 222 (E.D. Mich. 1998) (recognizing that *Harrington* was superceded by statute with the passage of the 1991 Civil Rights Act which provided for the award of compensatory and punitive damages in Title VII actions.)

17

summary judgment motion. (*See* ECF No. 20, at *6 n. 4, "AT&T concedes that Gleed had a disability within the meaning of the ADA for purposes of summary judgment only.")

The Court rejects Plaintiff's argument that the Sixth Circuit has ruled on this issue in its opinion and order. Rather, in its opinion and order, the Sixth Circuit stated: "Here, AT&T concedes that Gleed has a disability and that he is able to perform the essential function of this job." (ECF No. 34, at 4.) Yet, Defendant's response brief before the Sixth Circuit clearly stated: "[b]ut as the District Court correctly noted, AT&T is not disputing his alleged protected status for summary judgment purposes." (Case no. 14-2088, Def.'s App. Br., at *13 n. 9.) From this record, the Court concludes that Defendant conceded the issue of whether Plaintiff had a qualifying disability <u>only</u> for purposes of its summary judgment motion and the issue was not presented to the Sixth Circuit on appeal. This conclusion can be read in harmony with the Sixth Circuit's opinion wherein it stated "*here*" the Defendant had conceded the issue, *i.e.* for summary judgment purposes. Accordingly, the Court denies Plaintiff's request and finds that Defendant has neither waived or conceded the issue.

IV. CONCLUSION

For all these reasons, the Court GRANTS Defendant's second Motion *in limine* and precludes Plaintiff's treating physicians from offering expert opinion testimony regarding causation or exacerbation, or opinion testimony regarding Plaintiff's pain and mental suffering. Additionally, Plaintiff is also precluded from testifying as to his beliefs regarding causation or exacerbation. The Court further GRANTS Defendant's request to preclude Plaintiff from seeking wage loss damages and DENIES Plaintiff's request that the Defendant be foreclosed from disputing whether Plaintiff had a qualifying disability under the ADA.

IT IS SO ORDERED.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: APR 1 2 2016